UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Roy D. Wallen, | ) |
| *Plaintiff*, | ) Civil No. _____ |
| v. | ) |
| | ) **DEMAND FOR JURY TRIAL** |
| TendoNova Corporation, | ) |
| *Defendant*. | ) |

# COMPLAINT

Plaintiff, Roy D. Wallen, by and through undersigned counsel, hereby complains against TendoNova Corporation ("TendoNova" or the "Company") as follows:

**Nature of the Action**

1. The above-captioned matter arises out of TendoNovo's unlawful treatment of Mr. Wallen, who was employed as TendoNova's Chief Executive Officer ("CEO"). Mr. Wallen alleges that TendoNova (a) failed to pay Mr. Wallen wages in accordance with the federal Fair Labor Standards Act of 1938 ("FLSA") and New Hampshire law, (b) is subject to liquidated damages pursuant to the FLSA and New Hampshire law, (c) failed to pay Mr. Wallen for expenses incurred on behalf of TendoNova in violation of New Hampshire law, (d) breached the Restricted Stock Agreement, and (e) misclassified Mr. Wallen as an independent contractor to avoid the protections afforded by the FLSA and New Hampshire law.

**Parties**

2. Mr. Wallen is an individual who resides in Brookline, New Hampshire.

3. TendoNova is a for profit corporation organized under the laws of the State of Delaware.

4. TendoNova has a principal place of business at 1161 The By Way NE in Atlanta, Georgia.

5. TendoNova is registered as a foreign corporation with the Secretary of State of the State of New Hampshire and conducts business within the State of New Hampshire. TendoNova has a place of business located at 25 Roxbury Street, Suite 209, Keene, New Hampshire.

**Jurisdiction and Venue**

6. This Court has subject matter jurisdiction over the above-captioned matter under 28 U.S.C. § 1331 because this is a civil action arising under the FLSA.

7. This Court has supplemental jurisdiction over the state law claims in the above-captioned matter under 28 U.S.C. § 1367.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims in the above-captioned matter occurred in New Hampshire.

**Factual Basis of the Plaintiff's Claims**

9. TendoNova is a start-up company developing specialized tools for minimally invasive orthopedic procedures.

10. TendoNova was incorporated in Delaware on December 6, 2017.

11. TendoNova has a principal place of business in Georgia and an office in New Hampshire.

12. Mr. Wallen is a Founder of TendoNova, and he executed a Stockholder Agreement with TendoNova in March 2018.

13. He also executed a Restricted Stock Agreement with TendoNova in March 2018.

14. Mr. Wallen served as Treasurer and President of TendoNova.

15. Additionally, TendoNova employed Mr. Wallen as a full-time CEO from December 2017 to May 2020.

16. TendoNova represented Mr. Wallen as its CEO in a variety of international publications, including, but not limited to, the New Hampshire Business Review, BusinessNH Magazine, the Young Enterprise Initiative-Start in France 2018 Award List, a Georgia Tech article on TendoNova, and BioMed Investor Network.

17. Similarly, TendoNova represented Mr. Wallen as its CEO at a variety of national and international events, including, but not limited to, the Musculoskeletal New Ventures Conference, McKinsey Healthcare Pre-Series A Investor Conference, MassMEDIC MedTech Showcase, Tech Out Competition, Flatley Start-Up Pitch Night, Flatley Challenge, Start in France 2018, and the American Medical Society for Sports Medicine Annual Meeting.

18. As CEO, Mr. Wallen reported to the TendoNova Board of Directors (the "Board").

19. Mr. Wallen performed the majority of his work for TendoNova in New Hampshire, where the Company had office space and Mr. Wallen had office space in his home. However, Mr. Wallen also traveled throughout the country performing his work for TendoNova, including traveling to and working in Savannah, Georgia, Atlanta, Georgia, Chattanooga, Tennessee, Memphis, Tennessee, Houston, Texas, and Boston, Massachusetts.

20. As such, Mr. Wallen engaged in commerce..

21. Mr. Wallen typically worked more than forty (40) hours per week for TendoNova's benefit.

22. In relevant part, Mr. Wallen's job responsibilities as CEO included, among other things:

    a. Completing initial company formation and registration, as well as subsequent annual registrations;

    b. Raising capital for TendoNova;

    c. Serving as a spokesperson for TendoNova at various events and conferences;

    d. Serving as the primary contact for potential investors;

    e. Obtaining grants for TendoNova;

    f. Serving as the registered agent for TendoNova;

    g. Serving as the representative for TendoNova on all patent matters; and

    h. Negotiating license agreements with Emory University and Georgia Tech Research Corporation.

23. During his tenure as CEO, Mr. Wallen raised $961,800 in outside investment capital for TendoNova, exclusive of grants or founder's capital. Mr. Wallen also raised an additional $350,000 in capital for TendoNova that was pending closure at the time of Mr. Wallen's employment termination.

24. Although Mr. Wallen had a number of job responsibilities, as outlined above, those responsibilities required no technical or specialized skills.

25. Further, Mr. Wallen's opportunity for profit or loss did not depend upon his managerial skill.

26. Mr. Wallen did not have authority to delegate tasks to other individuals. Rather, the Board delegated certain tasks to Mr. Wallen and other Stockholders of TendoNova.

27. Similarly, Mr. Wallen did not have the authority to hire or fire other employees. Rather, the Board hired and fired employees.

28. Similarly, Mr. Wallen was not allowed to exercise independent judgment in carrying out his job responsibilities. Rather, the Board dictated and monitored many aspects of Mr. Wallen's job responsibilities, including, but not limited to, the pursuit of regulatory strategy, the use of outside resources for reimbursement positioning, establishment of contractors for product development, negotiations with potential investors, publication of TendoNova newsletters, and payment of invoices.

29. Additionally, the Board, not Mr. Wallen, determined whether Mr. Wallen would be compensated for his work performed for TendoNova, including the amount of such compensation.

30. The Board invested in certain equipment and/or materials required for Mr. Wallen to perform his job responsibilities as CEO. Further, Mr. Wallen submitted expense reports to the Board for approval and reimbursement.

31. Although Mr. Wallen did not execute an Employment Agreement with the Board upon commencing his employment as CEO, TendoNova did require Mr. Wallen to agree to non-compete and non-solicitation provisions in the Restricted Stock Agreement.

32. Based on the foregoing, Mr. Wallen was an employee of TendoNova as defined under the FLSA and New Hampshire law.

33. Despite this, TendoNova willfully and deliberately misclassified Mr. Wallen as an independent contractor to avoid the protections afforded by the FLSA and New Hampshire law.

34. Based on this willful misclassification, TendoNova justified requiring Mr. Wallen to work without receiving any compensation in violation of the FLSA and New Hampshire law.

35. On May 26, 2020, TendoNova abruptly terminated Mr. Wallen's employment as CEO. A copy of the letter confirming Mr. Wallen's employment termination is attached hereto as **Exhibit A**.

36. TendoNova did not pay Mr. Wallen any wages during his employment with TendoNova from December 6, 2017 to May 26, 2020, nor did TendoNova pay Mr. Wallen wages in full within 72 hours of his employment termination.

37. TendoNova also has not paid Mr. Wallen for certain out-of-pocket expenses that he incurred on behalf of TendoNova and at TendoNova's request.

**Count I: Violation of the FLSA – Unpaid Minimum Wages**

38. Mr. Wallen repeats and realleges all paragraphs above and below as if fully set forth herein.

39. At all relevant times, Mr. Wallen was engaged in commerce within the meaning of the FLSA.

40. At all relevant times, Mr. Wallen was an employee of TendoNova within the meaning of the FLSA.

41. At all relevant times, TendoNova has been an employer engaged in commerce and/or the production of goods for commerce within the meaning of the FLSA.

42. TendoNova failed to pay Mr. Wallen wages in an amount commensurate with his position as CEO to which he is entitled under the FLSA.

43. As a result of TendoNova's violations of the FLSA, Mr. Wallen has suffered damages by being denied wages in accordance with the FLSA in amounts commensurate with

his position as CEO to be determined at trial and compensation for benefits, and he is entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the FLSA.

44. TendoNova's unlawful conduct, as described in this Complaint, was intentional and willful. TendoNova was aware or should have been aware that the practice described herein was unlawful. TendoNova has not made a good faith effort to comply with the FLSA with respect to the compensation of Mr. Wallen.

**Count II: Violation of R.S.A. 279:21**

45. Mr. Wallen repeats and realleges all paragraphs above and below as if fully set forth herein.

46. Pursuant to R.S.A. 279:21, TendoNova was required to pay Mr. Wallen at least minimum wage for hours worked.

47. As set forth above, TendoNova failed to pay Mr. Wallen for any hours worked from December 6, 2017 to May 26, 2020.

48. As a result of TendoNova's violations of R.S.A. 279:21, Mr. Wallen has suffered damages by being denied payment of minimum wages in accordance with New Hampshire law in amounts to be determined at trial, and he is entitled to recover such amounts, prejudgment interest, attorneys' fees and costs under R.S.A. 279:29.

**Count III: Violation of R.S.A. 275:43**

49. Mr. Wallen repeats and realleges all paragraphs above and below as if fully set forth herein.

50. Pursuant to R.S.A. 275:43, TendoNova was required to pay Mr. Wallen wages for all hours worked during each pay period on a weekly or bi-weekly basis.

51. As set forth above, TendoNova failed to pay Mr. Wallen for any hours worked from December 6, 2017 to May 26, 2020.

52. As a result of TendoNova's violations of R.S.A. 275:43, Mr. Wallen has suffered damages by being denied payment of wages in accordance with New Hampshire law in amounts to be determined at trial, and he is entitled to recover such amounts, prejudgment interest, attorneys' fees and costs under R.S.A. 275:53.

### Count IV: Violation of R.S.A. 275:44

53. Mr. Wallen repeats and realleges all paragraphs above and below as if fully set forth herein.

54. Pursuant to R.S.A. 275:44, TendoNova was required to pay Mr. Wallen wages in full within 72 hours after his termination.

55. As set forth above, TendoNova failed to pay Mr. Wallen wages in full within 72 hours after his termination. In fact, TendoNova has continued to refuse to pay Mr. Wallen any wages for hours worked from December 6, 2017 to May 26, 2020.

56. As a result of TendoNova's violations of R.S.A. 275:44, Mr. Wallen has suffered damages by being denied payment of wages in accordance with New Hampshire law in amounts to be determined at trial, and he is entitled to recover such amounts, prejudgment interest, liquidated damages, attorneys' fees and costs under R.S.A. 275:44 and 275:53.

### Count V: Unjust Enrichment

57. Mr. Wallen repeats and realleges all paragraphs above and below as if fully set forth herein.

58. During his employment as CEO, Mr. Wallen incurred reasonable expenses while participating in events and activities at TendoNova's request.

59. The reasonable expenses that Mr. Wallen incurred are reimbursable as company expenses.

60. At this time, TendoNova has failed to reimburse Mr. Wallen for such company expenses.

61. As a result, TendoNova has benefitted from its failure to reimburse Mr. Wallen for the expenses he incurred on behalf of TendoNova and at TendoNova's request.

62. Based on the foregoing, it would be inequitable and unjust for TendoNova to retain the amount owed to Mr. Wallen for the reimbursable expenses that he incurred at TendoNova's request.

63. Therefore, Mr. Wallen is entitled to damages in an amount within the jurisdictional limits of this Court.

## Count VI: Breach of Contract

64. Mr. Wallen repeats and realleges all paragraphs above and below as if fully set forth herein.

65. Mr. Wallen executed a Restricted Stock Agreement with TendoNova in 2018.

66. The Restricted Stock Agreement is a valid, binding contract between Mr. Wallen and TendoNova.

67. Pursuant to the Restricted Stock Agreement, Mr. Wallen was entitled to shares of restricted stock vesting in TendoNova in the following manner:

| Vesting Date | Shares of Restricted Stock Vesting |
|---|---|
| Each of December 31, 2018 and December 31, 2019 | 10,000 |
| December 31, 2020 | 20,000 |
| Company closes the first 50% of targeted equity initial equity raise (as mutually agreed by the Company and Founder) | 20,000 |
| Company closes the second 50% of targeted equity initial equity raise (as mutually agreed by the Company and Founder) | 20,000 |
| Company obtains US FDA regulatory clearance for its product | 20,000 |
| Company obtains first $10,000 in recurring revenue from the sale of its products | 20,000 |
| TOTAL | 120,000 |

68. Based on the foregoing, Mr. Wallen is entitled to 10,000 shares of restricted stock that vested on December 31, 2018 and another 10,000 shares of restricted stock that vested on December 31, 2019.

69. Further, Mr. Wallen is entitled to a prorated amount of the 20,000 shares of restricted stock that were scheduled to vest on December 31, 2020 in the amount of 8,333 shares (January 1, 2020 – May 26, 2020).

70. Additionally, TendoNova closed funding in the full amount of the targeted initial equity raise. As a result, Mr. Wallen is entitled to 20,000 shares of restricted stock that vests on the first 50% of targeted initial equity raise and 20,000 shares of restricted stock that vests on the second 50% of targeted initial equity raise.

71. Based on the foregoing, Mr. Wallen is entitled to restricted stock in TendoNova in the amount of 68,333 shares.

72. Despite demand, TendoNova has refused to provide Mr. Wallen with the amount of stock that he is entitled to under the Restricted Stock Agreement.

73. As a result, TendoNova has breached the terms of the Restricted Stock Agreement.

74. Therefore, Mr. Wallen is entitled to 68,333 shares of TendoNova stock and damages in an amount to be determined by this Honorable Court.

## PRAYERS FOR RELIEF

WHEREFORE, Mr. Wallen respectfully requests that this Honorable Court:

A. Enter judgment against TendoNova on all counts;

B. Award Mr. Wallen unpaid wages in an amount commensurate with his position as CEO in accordance with the FLSA and New Hampshire law;

C. Award Mr. Wallen liquidated damages in accordance with the FLSA and New Hampshire law;

D. Award Mr. Wallen unreimbursed expenses in accordance with New Hampshire law;

E. Award Mr. Wallen attorneys' fees and costs in accordance with the FLSA and New Hampshire law;

F. Award Mr. Wallen pre- and post-judgment interest;

G. Order TendoNova to treat Mr. and Mrs. Wallen, as stockholders of TendoNova, in the same manner as other stockholders of TendoNova;

H. Award Mr. Wallen vested stock in TendoNova in the amount of 68,333 shares; and

I. Grant such further relief as may be just and proper.

Respectfully submitted,
Roy D. Wallen

By and through his counsel,
Bernstein, Shur, Sawyer & Nelson, P.A.

Dated: July 20, 2020

*/s/ Hilary Holmes Rheaume*
Hilary Holmes Rheaume, Esq., NH Bar No. 265510
670 N. Commercial St., Suite 108
P.O. Box 1120
Manchester, New Hampshire 03105

(603) 623-8700
hrheaume@bernsteinshur.com