UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Roy D. Wallen

     v.                                      Civil No. 20-cv-790-SE
                                          Opinion No. 2022 DNH 145
TendoNova Corp.

O R D E R

Roy Wallen served as the Chief Executive Officer of
TendoNova Corporation, a start-up medical device company, for
more than two years. In May 2020, TendoNova terminated Wallen's
employment. Wallen instituted this suit, alleging that TendoNova
violated the Fair Labor Standards Act ("FLSA") and New Hampshire
wage laws and asserting claims for unjust enrichment and breach
of contract. TendoNova moves for summary judgment (doc. no. 33),
seeking judgment in its favor on Wallen's wage law claims on the
ground that Wallen was an independent contractor, not an
employee, and therefore not protected by the FLSA or New
Hampshire wage laws. In the alternative, TendoNova asks the
court to rule that Wallen's damages for his wage law claims are
limited to federal minimum wages and overtime for any hours that
he worked. TendoNova also seeks summary judgment on Wallen's
breach of contract claim because he purportedly assigned his
interest in the relevant contract to another entity. Wallen
objects to the motion.

For the reasons explained below, genuine disputes of material fact prevent the court from concluding that Wallen was an independent contractor, rather than TendoNova's employee. Further, it is unclear from the summary judgment record whether Wallen is precluded from enforcing his rights under the parties' agreement. The court agrees with TendoNova, however, that Wallen's damages under the FLSA and New Hampshire wage laws will be computed based on the federal minimum wage. For those reasons, the court grants TendoNova's motion in part and denies it in part.

### Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "carries with it the potential to affect the outcome of the suit." French v. Merrill, 15 F.4th 116, 123 (1st Cir. 2021) (quotation omitted). A material fact is in genuine dispute if "a reasonable jury could resolve the point in the favor of the non-moving party." Id. The court construes the record in the light most favorable to the nonmoving party. Benson v. Wal-Mart Stores East, L.P., 14 F.4th 13, 17 (1st Cir. 2021). In considering a motion for summary

judgment, the court may review materials cited in the motion and other materials in the record. Fed. R. Civ. P. 56(c)(1)(3).

## Background

TendoNova is a company engaged in the development, design, and manufacture of tools for minimally invasive orthopedic procedures.[1] The initial founders were four students at the Georgia Institute of Technology, who began the company as a class project and continued to work on it after graduating.[2] At some point in 2017, the initial founders determined that they could not devote the necessary time to grow TendoNova and needed someone who could serve as the company's CEO. They learned of Wallen, who operated a consulting company, Directional Healthcare Advisors, LLC ("DHA"), that provided advisory services for healthcare technology companies. The initial founders met Wallen and began discussing a potential role for DHA with TendoNova.

In September 2017, Wallen and the initial founders exchanged emails regarding Wallen's potential duties and

---

[1] Before December 2017, TendoNova was called "NewCo" or "UltraSurgical." Consistent with the parties' filings, the court will refer to the company as TendoNova throughout this order.

[2] Because, as discussed below, an agreement between Wallen and TendoNova defines Wallen as a "founder," the court will refer to the four initial founders of the company as the "initial founders."

compensation structure. Wallen proposed "a split of cash and equity on a pay-as-you-go basis." Although Wallen and the initial founders discussed proposals, they did not agree to Wallen's pay structure at that time.

The following month, Wallen emailed the initial founders to tell them that he wanted to start accruing time for his work. He noted that he had been keeping track of his hours, and stated that once they all agreed, they could "convert the hours to dollars or equity or a mix of cash and equity." Doc. no. 33-4 at 4. On October 3, 2017, the initial founders and DHA entered into a Memorandum of Understanding ("MOU"). Doc. no. 33-5. The MOU authorized DHA to begin tracking the hours that Wallen spent on work for TendoNova and stated that the "tracked hours will become billable upon the incorporation and signed completion of a formal agreement between" DHA and TendoNova. Id. at 2.

Later in October, Wallen proposed a contract between TendoNova and DHA. Among other things, the proposed contract provided that DHA would be paid $190 per hour and that the initial expected workload was four hours per week. Doc. no. 33-6 at 2-3. TendoNova did not agree to the proposed contract.

Instead, on October 26, 2017, Wallen and the initial founders discussed via email two separate compensation

structures for Wallen.[3] Doc. no. 33-7. The first was fully equity-based and Wallen's compensation would depend on TendoNova hitting performance milestones and the number of years Wallen served as TendoNova's CEO. Id. at 4. The second was a mix of equity and deferred cash compensation, with the "equity balanced out based on [the] deferred payment." Id. Wallen agreed to the first, equity-based, option and negotiated an increase from the offered 10% interest to a 12% interest "[g]iven the risk and responsibility." Id.

In March 2018, TendoNova and Wallen entered into a "Restricted Stock Subscription Agreement" ("Stock Agreement"). Doc. no. 33-9. The Stock Agreement granted Wallen 120,000 shares of TendoNova's stock (12% of TendoNova's stock, as Wallen requested in his email) that would vest pursuant to a schedule contained in the Agreement. The Stock Agreement, which did not mention Wallen's duties and defined him as a "founder," was the only agreement signed by the parties.

---

[3] Although previous discussions and proposed arrangements appear to have contemplated a relationship between DHA and TendoNova, these emails and the eventual agreement focused on a relationship between TendoNova and Wallen in his personal capacity.

Wallen worked for TendoNova as its CEO until TendoNova terminated him on May 26, 2020.[4]

Wallen initiated this lawsuit, alleging that TendoNova: 1) failed to pay him wages for his work as CEO as required under the FLSA (Count I) and New Hampshire Wage laws (Counts II-IV); 2) failed to reimburse him for out-of-pocket expenses he incurred on TendoNova's behalf (Count V); and 3) breached the Stock Agreement by not issuing the required shares (Count VI).

## Discussion

TendoNova moves for summary judgment on Wallen's wage-law claims in Counts I-IV. Alternatively, it requests a ruling that Wallen's damages for those claims are limited to federal minimum wage and overtime. In addition, TendoNova seeks summary judgment on Wallen's breach of contract claim in Count VI, arguing that Wallen assigned his interest under the Stock Agreement to DHA and has no standing to assert the claim. Wallen objects to the motion in its entirety.

---

[4] Although the parties agree that Wallen worked as TendoNova's CEO, the date he took on that role is unclear. The exact date Wallen became TendoNova's CEO is not relevant to the issues raised in TendoNova's summary judgment motion.

I.   <u>Wage-Law Claims</u>

TendoNova argues that it is entitled to summary judgment on Counts I-IV because the FLSA and New Hampshire wage laws protect only employees and Wallen was an independent contractor, not an employee. Although the FLSA and New Hampshire wage laws are similar in many respects, they employ different tests to determine whether a worker is an employee or an independent contractor. Therefore, the court addresses Wallen's claim under the FLSA in Count I separately from his New Hampshire wage law claims in Counts II-IV.


A.   <u>FLSA</u>

The FLSA requires employers to pay their employees not less than a prescribed minimum wage. 29 U.S.C. § 206. Independent contractors, however, are not considered protected employees under the statute. <u>See</u>, <u>e.g.</u>, Moreau v. Medicus HealthCare Sols., LLC, No. 20-CV-1107-JD, 2021 WL 919869, at *1 (D.N.H. Mar. 10, 2021).

The determination of whether a worker is an employee or an independent contractor for FLSA purposes is "ultimately a question of law," but is, understandably, "fact-intensive." Sebren v. Harrison, 552 F. Supp. 3d 249, 257 (D.R.I. 2021). Thus, "when the evidence, viewed in the light most favorable to the plaintiff, reveals that there is a genuine issue of material

fact whether the worker is an employee or an independent contractor, then summary judgment is inappropriate." Keller v. Miri Microsystems LLC, 781 F.3d 799, 804–05 (6th Cir. 2015).

To determine whether a worker is an employee or an independent contractor under the FLSA, courts generally look at the "economic reality" of the worker's relationship with the employer. See Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 674–75 (1st Cir. 1998). As the parties agree, the factors that a court in the First Circuit should consider when employing the economic reality test in this context are not perfectly clear.

Most other circuits consider six factors when applying the economic reality test in the independent contractor/employee analysis: (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the individual's opportunity for profit or loss depending on his managerial skill; (3) the individual's investment in equipment or materials required for his task, or the employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the employer's business. See Walsh v. Alpha & Omega USA, Inc., 39 F.4th 1078, 1082 (8th Cir. 2022); Gilbo v. Agment, LLC, 831 F. App'x 772, 775 (6th Cir. 2020); Nieman v. Nat'l Claims

Adjusters, Inc., 775 F. App'x 622, 624 (11th Cir. 2019); Acosta v. Jani-King of Oklahoma, Inc., 905 F.3d 1156, 1160 (10th Cir. 2018); Est. of Suskovich v. Anthem Health Plans Of Virginia, Inc., 553 F.3d 559, 565 (7th Cir. 2009); Real v. Driscoll Strawberry Assocs., Inc., 603 F.2d 748, 754 (9th Cir. 1979). A minority of circuits eliminate the third factor — the individual's investment in equipment or materials — and employ a five-factor test. See, e.g., Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc., 7 F.4th 301, 313 n.17 (5th Cir. 2021). This five-factor test is also set forth in a 2021 Rule adopted by the Wage and Hour Division of the U.S. Department of Labor ("DOL"), entitled Independent Contractor Status Under the Fair Labor Standards Act. See 86 Fed. Reg. 1168 (Jan. 7, 2021). In addition, the Internal Revenue Service has its own test for determining whether a worker is an employee or an independent contractor. See 26 C.F.R. § 31.3121(d)(1).

The First Circuit has neither adopted nor rejected any of these tests. In a different context, the First Circuit has employed a four-factor "economic reality" test to determine whether a worker should be considered a party's employee under the FLSA. See Baystate, 163 F.3d at 675.[5] Certain district courts

---

[5] The four factors the First Circuit used in Baystate are: "whether the alleged employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate

in the First Circuit have applied Baystate's four-factor test in
the independent contractor/employee determination. See, e.g.,
Maldonado v. Cultural Care, Inc., No. CV 20-10326-RGS, 2020 WL
4352846, at *3 (D. Mass. July 29, 2020). Others, however, employ
the more common six-factor test. See, e.g., Sigui v. M + M
Commc'ns, Inc., 484 F. Supp. 3d 29, 36 (D.R.I. 2020).

     In the court's view, the six-factor test is appropriate to
determine whether Wallen was TendoNova's employee or an
independent contractor. In Baystate, the First Circuit employed
the four-factor test to determine whether workers were better
classified as employees of temporary employment agencies or the
client companies for which they performed actual labor. 163 F.3d
at 675-76. The court noted that the question of whether the
workers were employees or independent contractors was not before
it, and specifically declined to consider factors that may bear
on that question. Id. at 675, 675 n.9.

     The court also sees no reason to use anything other than
the standard six-factor test. As mentioned, only a minority of
courts use the five-factor test. Additionally, the DOL Rule that
adopted the five-factor test is not controlling, see Harris v.
Diamond Dolls of Nevada, LLC, No. 319CV00598RCJCBC, 2022 WL

---

and method of payment; and (4) maintained employment records."
Id.

4125474, at *2 (D. Nev. July 26, 2022), and may not be valid.[6]
Moreover, the IRS's test to determine an independent contractor
does not pertain to any status under the FLSA. For these
reasons, the court will employ the commonly used six-factor test
to determine whether Wallen was TendoNova's employee. The court
notes and agrees with the parties that the outcome of
TendoNova's summary judgment motion does not depend on which of
the similar tests the court employs.

### 1. Nature and degree of control

The first factor considers "whether the workers were
subject to control 'such that they did not stand as separate
economic entities who were 'in business for themselves.'" Sigui,
484 F. Supp. 3d at 37 (quoting Scantland v. Jeffry Knight, Inc.,
721 F.3d 1308, 1313 (11th Cir. 2013)). "Evidence tends to show
control by an employer when it reflects the employer's dominance

---

[6] The DOL published the Rule on January 7, 2021, scheduling
it to take effect on March 8, 2021. The DOL then delayed the
rule and officially withdrew it on May 6, 2021. See Independent
Contractor Status Under the Fair Labor Standards Act, DOL,
https://www.dol.gov/agencies/whd/flsa/2021-independent-
contractor. However, on March 14, 2022, the Eastern District of
Texas vacated the rules delaying and withdrawing the original
rule and held that 86 Fed. Reg. 1168 became effective on March
8, 2021. Coalition for Workforce Innovation v. Walsh, No. 1:21-
CV-130, 2022 WL 1073346 (E.D. Tex. Mar. 14, 2022). The DOL
appealed that decision, and that appeal is currently pending
before the Fifth Circuit. See Coal. for Workforce Innovation v.
Walsh, Case No. 22-40316 (5th Cir. 2022).

over the manner and method of how work is performed." Harris v. Skokie Maid & Cleaning Serv., Ltd., No. 11 C 8688, 2013 WL 3506149, at *7 (N.D. Ill. July 11, 2013) (quotation omitted).

TendoNova argues that the record evidence demonstrates that it did not exercise control over the key aspects of Wallen's performance of his work. It asserts that Wallen did not need approval to attend events, had no set schedule, and continued to work for other companies through DHA during his relationship with TendoNova. It also states that Wallen had control over how he was going to reach his fundraising goals, with little oversight from the board.

Wallen disagrees and contends that TendoNova's board of directors did exercise substantial control over his work performance. He points to his deposition testimony that the board assigned him tasks, closely monitored his communications with investors and his day-to-day work, and generally delegated specific tasks to him as CEO. He further testified at his deposition that the board's demand that he adhere to a particular schedule effectively eliminated his availability to work for other clients through DHA.

Viewing the evidence in the light most favorable to Wallen, there is a genuine dispute of material fact as to the extent of TendoNova's control over Wallen's work as CEO.

2. Opportunity for profit or loss

The second "factor questions whether workers had an opportunity for greater profits based on their management and technical skills." Sigui, 484 F. Supp. 3d at 38 (quotation and alteration omitted). "If the individual's opportunity for profit or loss appears to depend more upon the managerial skills of the alleged employer than it does upon the individual's own judgment and industry, this factor weighs in favor of employee status." Id. (quotation and alteration omitted).

TendoNova argues that this factor illustrates Wallen's status as an independent contractor because his compensation was entirely equity-based.[7] The value of Wallen's equity in the company would increase if he met certain fundraising and other goals (because this would increase the value of Wallen's stock in TendoNova). TendoNova argues that, therefore, Wallen's opportunity for profit or loss depended on his own performance.

TendoNova describes duties performed by Wallen, such as raising funds and pursuing regulatory approval, that would likely add value to the company if Wallen were successful. However, it is not clear on this record that Wallen had such

---

[7] As discussed further below, Wallen contends that he was entitled to compensation in addition to equity in TendoNova. Because Wallen's compensation structure does not affect the court's analysis, the court does not resolve the parties' dispute here.

13

significant independent control over decisions that could impact the value of the stock that it would be appropriate to find that the value depended more on his own judgment and industry than on the board's managerial skills.

Moreover, even if Wallen had authority to take certain actions that could have increased TendoNova's stock value without consulting the board of directors, TendoNova offers no support for its theory that such equity-based compensation alone is sufficient to establish this second factor. Indeed, under TendoNova's theory, this factor would weigh in favor of independent contractor status for nearly any CEO who owned stock in his or her employer. The court is unwilling to paint with such a broad brush. Viewing the record evidence in the light most favorable to Wallen, there is a genuine dispute of material fact as to Wallen's opportunity for profit or loss.

### 3. Remaining Factors

When viewing the evidence in the light most favorable to Wallen, genuine disputes of material fact exist with regard to the remaining factors. In light of the first two factors, however, the court declines to address the remaining factors because TendoNova is not entitled to summary judgment on Wallen's FLSA claim in any event. See Martin v. Shelby Telecom, LLC, No. 2:11-CV-01563-AKK, 2012 WL 2476400, at *7 (N.D. Ala.

June 26, 2012) (denying the defendant's motion for summary judgment on FLSA claim based on independent contractor/employee analysis and declining to reach additional factors when genuine disputes of material fact existed as to the nature and extent of employer's control over individual's work and opportunity for profit or loss based on managerial skill); Lang v. DirecTV, Inc., 801 F. Supp. 2d 532, 540 (E.D. La. 2011) (employing the Fifth Circuit's five-factor test to determine if a worker is an employee or an independent contractor under the FLSA and concluding that "[g]iven the disputed issues of fact on control and on plaintiffs' ability to influence their profits and losses, regardless of the outcome of the analysis of these other factors, the Court is still unable to accurately determine plaintiffs' status on this summary judgment record"). Therefore, the court denies TendoNova's motion to the extent it seeks summary judgment on Count I.


    B.   New Hampshire Wage Laws

Wallen asserts three claims alleging violations of New Hampshire wage laws. Count II alleges a violation of RSA 279:21, which requires an employer to pay its employees no less than minimum wage. Counts III and IV allege violations of RSA 275:43 and 275:44, respectively, both of which require an employer to

pay its employees at least minimum wage within a certain time frame.

As with the FLSA, New Hampshire wage laws apply only to employees. RSA 279:1 excludes from the definition of employee "any person who meets all of the following criteria":

> (a) The person possesses or has applied for a federal employer identification number or social security number, or in the alternative, has agreed in writing to carry out the responsibilities imposed on employers under this chapter.
> (b) The person has control and discretion over the means and manner of performance of the work, in that the result of the work, rather than the means or manner by which the work is performed, is the primary element bargained for by the employer.
> (c) The person has control over the time when the work is performed, and the time of performance is not dictated by the employer. However, this shall not prohibit the employer from reaching an agreement with the person as to completion schedule, range of work hours, and maximum number of work hours to be provided by the person, and in the case of entertainment, the time such entertainment is to be presented.
> (d) The person hires and pays the person's assistants, if any, and to the extent such assistants are employees, supervises the details of the assistants' work.
> (e) The person holds himself or herself out to be in business for himself or herself or is registered with the state as a business and the person has continuing or recurring business liabilities or obligations.
> (f) The person is responsible for satisfactory completion of work and may be held contractually responsible for failure to complete the work.
> (g) The person is not required to work exclusively for the employer.

RSA 279:1, X.

As discussed above, viewing the evidence in the light most favorable to Wallen, there is a genuine dispute of material fact as to whether Wallen had control and discretion over the means and manner of performance of his work. Therefore, the court cannot determine at this stage whether Wallen was TendoNova's employee for purposes of New Hampshire's wage laws. For that reason, the court denies the portion of TendoNova's motion seeking summary judgment on Counts II-IV.

II.  Damages for Wage Law Claims

The FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce . . . not less than" minimum wage. 29 U.S.C. § 206(a)(1)(C). The FLSA also requires employers to pay employees for overtime hours (those over 40 in a work week) at a rate of at least one-and-a-half times the "regular rate" of pay.[8] Id. § 207(a)(1).

New Hampshire law provides similar protection for its employees, and its "overtime compensation[] and minimum wage

_____

[8] The FLSA exempts from its requirements certain employees, but TendoNova does not dispute for purposes of its motion that, to the extent the court concludes that Wallen was TendoNova's employee, he is covered by the FLSA.

requirements are analogous to the FLSA's regulations and requirements." Chen v. C & R Rock Inc., No. 14-CV-114-AJ, 2016 WL 1117416, at *5 n.6 (D.N.H. Mar. 22, 2016). RSA § 279:21 states that: "Unless otherwise provided by statute, no person, firm, or corporation shall employ any employee at an hourly rate lower than that set forth in the federal minimum wage law, as amended." RSA 275:43, VII(c)(2) provides: "If an employee has accrued more than the applicable ceiling for compensatory time, such employee shall be paid overtime pay at time and one half of the employee's regular rate of pay on the designated pay day."

TendoNova argues that the FLSA and New Hampshire wage laws limit Wallen's damages to the federal minimum wage and overtime for every hour that he worked for TendoNova. Wallen contends that minimum wage is the floor for his recovery under the FLSA and New Hampshire law, but not the ceiling.[9]

A.   Recovery for Unpaid Wages

Congress intended the FLSA "to protect all covered workers from substandard wages and oppressive working hours." Barrentine v. Arkansas–Best Freight Sys., Inc., 450 U.S. 728, 739 (citing

---

[9] In their filings, the parties focus almost entirely on the FLSA and argue that the result is the same under New Hampshire law. The court agrees and, other than is necessary for purposes of clarification, analyzes Wallen's potential recovery for his wage claims under the FLSA. See Chen, 2016 WL 1117416, at *5 n.6.

29 U.S.C. § 202(a)). Thus, "[a]ny employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

The plain language of § 216(b) is unambiguous — an employee's recovery for a violation of § 206 of the FLSA, the claim that Wallen alleges here, is the amount of his unpaid minimum wages or unpaid overtime, plus an equal amount as liquidated damages. Wallen cites no support for his theory that an employee can recover more than is set forth in the statute's language.

Instead, Wallen tries to muddy the water by arguing that he is entitled to additional compensation generally. For example, he suggests that, at some point, TendoNova created a *pro forma* profit and loss statement that included $180,000 entered as a cash compensation line item for his role. Doc. No. 33-8 at 29. He also points to his designated expert who offers an opinion that someone in Wallen's role should have been paid at least $200,000 per year.

Neither the $180,000 figure nor Wallen's proposed expert is relevant to Wallen's claim for unpaid wages under the FLSA. Wallen may believe that TendoNova promised to pay him a

particular salary eventually or that he is entitled to compensation for the fair value of his services, but that recovery is not available under the FLSA.[10] See, e.g., Foster v. Angels Outreach, LLC, No. CIVA 206CV980-ID WO, 2007 WL 4468717, at *3 (M.D. Ala. Dec. 17, 2007) ("Section 216(b) contains no provision for the recovery of unpaid wages which exceed the minimum wage, and Plaintiffs have not cited any authority which would allow for such recovery.").

For these reasons, the rate for Wallen's recovery for unpaid wages under the FLSA and New Hampshire law is limited to the federal minimum wage.

### B.   Recovery for Overtime

Wallen's complaint does not appear to allege a claim for unpaid overtime under either the FLSA or New Hampshire law. Nevertheless, because TendoNova addresses damages for such a claim and the analysis differs slightly from a claim for unpaid

---

[10] Unlike the FLSA, New Hampshire wage law arguably would allow a plaintiff to recover wages that are due under the parties' employment agreement. See Gould v. First Student Mgmt., LLC, No. 16-CV-359-PB, 2017 WL 3731025, at *2–3 (D.N.H. Aug. 29, 2017). Here, however, it is undisputed that Wallen and TendoNova had no employment agreement, and that the only agreement between them — the Stock Agreement — did not provide for wages. Therefore, Wallen's recovery for unpaid wages under New Hampshire wage law, as under the FLSA, is governed by statutory minimum wages.

wages, the court assumes for purposes of this order that Wallen seeks to recover for unpaid overtime.

The FLSA requires that employees who work more than 40 hours in a work week receive pay for overtime hours at a rate of at least one-and-a-half times the "regular rate" of pay.[11] Id. § 207(a)(1). The "regular rate" is defined in § 207(e), which provides that it "shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee." In other words, an "employee's 'regular rate' of pay is calculated as the 'hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed . . . .'" McGrath v. City of Somerville, 419 F. Supp. 3d 233, 251 (D. Mass. 2019) (quoting 29 C.F.R. § 778.108) (emphasis added).

It is undisputed that TendoNova did not pay Wallen any wages while he acted as the company's CEO. Thus, even if Wallen alleged a claim for overtime pay under either the FLSA or New Hampshire wage laws, he would not be entitled to any damages in excess of one-and-a-half times the minimum hourly rate. See, e.g., Rodriguez v. Cap. Com. Sols., LLC, 353 F. Supp. 3d 452, 463 (E.D. Va. 2017) (holding that the plaintiff, who received no

---

[11] New Hampshire law similarly requires employers to renumerate "overtime pay at time and one half of the employee's regular rate of pay . . . ." RSA § 275:43, VII(c)(2).

wages during the relevant period, was entitled to one-and-a-half times the minimum hourly wage for overtime compensation).

III. Breach of Contract Claim

Wallen's breach of contract claim in Count VI alleges that TendoNova breached the Stock Agreement by failing to issue him restricted stock in the company to which he is entitled under the Agreement. TendoNova asserts that Wallen assigned his interest in any TendoNova stock in the Stock Agreement to DHA. It argues that DHA is therefore the proper party to assert a breach of contract claim against TendoNova under the Stock Agreement and notes that DHA has filed a separate lawsuit against TendoNova alleging an identical breach of contract claim to Count VI. See Directional Healthcare Advisors, LLC v. TendoNova Corp., 1:21-cv-1015-SE (the "DHA Action"). Wallen objects, arguing that he can pursue his rights under the Stock Agreement.

There is no dispute that the parties to the Stock Agreement are TendoNova and Wallen. Although Wallen and DHA then entered into an agreement whereby Wallen "sells, assigns and transfers" his interest in TendoNova's stock to DHA, doc. no. 33-10, that agreement does not appear to change the fact that DHA is not a party to the Stock Agreement. Although DHA may be able to pursue its rights to TendoNova's shares referenced in the Stock

Agreement, it is unclear whether DHA would be able to do so against TendoNova, rather than against Wallen himself.

The court cannot dismiss Wallen's breach of contract claim based on the evidence in the summary judgment record. Whether consolidation of the DHA Action with the instant case may be appropriate, or whether the parties may want to consider stipulating as to the proper party to assert a claim under the Stock Agreement, are issues that the court suggests can be resolved before trial.

### Conclusion

For the foregoing reasons, the defendant's motion for partial summary judgment (doc. no. 33) is granted to the extent it seeks to limit Wallen's recovery for unpaid wages under the FLSA and New Hampshire law to minimum wage and is otherwise denied.

SO ORDERED.

_____
Samantha D. Elliott
United States District Judge

November 22, 2022

cc: Counsel of Record.